UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Knights Collision Center, LLC | : | |
| | : | |
| v. | : | Civil Action No. 09- |
| | : | ***Jury Trial Demanded*** |
| AAA Mid-Atlantic, Inc. | : | |

## COMPLAINT

Knights Collision Center, LLC hereby brings a series of claims against AAA Mid-Atlantic, Inc. ("AAA"), of which the following is a statement:

## THE PARTIES

1.     Plaintiff Knights Collision Center, LLC ("Knights") is a Pennsylvania corporation with its principal place of business located in this judicial district.  Knights provides automobile restoration, repair and towing services and is one of the largest AAA contractors in the Philadelphia, Pennsylvania area.  Since November 2007, Knights has contracted with AAA to provide emergency roadside assistance to AAA members.  Knights is a Minority Business Enterprise ("MBE") as defined by the National Minority Supplier Development Council and as adopted by the Minority Supplier Development Council of PA-NJ-DE.

2.     Defendant AAA Mid-Atlantic, Inc. ("AAA") is a non-stock, non-profit organization with corporate offices in Philadelphia, Pennsylvania and Wilmington, Delaware.  AAA offers a variety of services to its members, including emergency roadside assistance.  Through its network of emergency road service contractors, AAA provides its members with such emergency roadside assistance as towing, push outs, battery replacement, jump starts, keys and locksmith services.

**JURISDICTION AND VENUE**

3. This Court has original jurisdiction over this matter under 28 U.S.C. §§ 1331 and 1343, this action being brought under the Civil Rights Act of 1866, 42 U.S.C. §1981, and the Civil Rights Act of 1991, Pb. L. 102-166, 105 Stat. 1071 (Nov. 21, 1991). This Court may exercise supplemental jurisdiction over the State claim pursuant to 28 U.S.C. §1367.

4. Venue is proper in this Court by reason of 28 U.S.C. §1391(b) because a substantial number of the acts and omissions that give rise to this Complaint occurred in this judicial district.

**FACTUAL ALLEGATIONS**

5. On December 1, 2006, Knights entered into the standard Roadside Assistance Service Provider Agreement (the "RASPA") with AAA to provide a full range of emergency roadside assistance. Attached hereto as Exhibit "A" and made a part hereof is a copy of the RASPA between Knights and AAA dated June 1, 2008. The original RASPA dated December 1, 2006, and subsequent amendments, are not currently in the possession of Knights.

6. The RASPA delineated the specific geographic territory (a.k.a., area of coverage) within which Knights would be responsible to provide roadside assistance to AAA members upon AAA's "call."

7. Under the terms of the RASPA and periodic Rate Addendums, AAA agreed to pay Knights various fees for each emergency road service Knights provided to AAA members.

8. As reasonably foreseeable by AAA at the time the RASPA was executed, Knights acquired assets and employees to ensure that it could satisfy the demand for roadside service in its assigned territory. For example, among other things, Knights purchased and maintained

additional service vehicles, hired and maintained a sufficient number of drivers and service technicians, and purchased insurance, fuel, parts and supplies to ensure that it could fulfill its commitment to remain "on call" twenty-four hours a day, seven days a week to provide emergency roadside assistance to AAA members.

9. As reasonably foreseeable by AAA at the time the RASPA was executed, Knights' maintenance of its agreement with AAA greatly enhanced its business, providing a consistent and valuable revenue stream. Consequently, Knights came to depend upon, and had the reasonable expectation that it would receive a reasonably ascertainable stream of income from its relationship with AAA.

10. In or about November 2007, apparently because of poor response times in the Mid-Atlantic region, AAA modified the Roadside Service Provider program and moved to an AVL program in Knights' territory. Pursuant to that restructuring, AAA provided Knights with two GPS locator devices to assist it in responding to customer calls. Under the AVL system, the contractor with the closest available truck received the customer assistance call. At the time, Knights had an average ETA of 29 minutes for customer assistance calls.

11. In January 2008, AAA invited Knights to become part of the Preferred Service Provider ("PSP") program. AAA represented to Knights that as a participant in the PSP program, Knights would receive more customer assistance calls and would be paid more for each call (approximately $4 - $6 more per call), but that Knights would have to agree not to accept service calls from competing roadside service entities.

12. In May 2008, Knights formally was admitted as a participant in the PSP program. At the same time, Knights notified Allstate Motor Club and Cross Country Motor Club, two

3

competing roadside service companies, that it would no longer accept their customer service calls.  AAA also instructed Knights that as a participant in the PSP program it had to paint all of its service trucks white and affix AAA decals to them, and that it should purchase two flatbed trucks.

13.	Based on the representations made by AAA to Knights regarding the financial benefits it could expect as a participant in the PSP program, Knights painted all of its service trucks white, affixed AAA decals to them and purchased two flatbed trucks at a cost of approximately $70,000 each.

14.	As a participant in the PSP program, Knights is entitled to participate in AAA's bonus program.  Payments are made quarterly under the bonus program, and bonuses typically amount to between $5,000 and $8,000 each quarter.  A participant must achieve a designated score on a survey of customer calls in order to qualify for a bonus.  For the bonus payable in July 2008, the designated survey score was 75.0%; Knights' score was 74.5%.  However, Knights discovered that it missed the bonus score because AAA had surveyed on duplicate calls, which should not have occurred.  Knights brought this error to the attention of AAA, but AAA refused to acknowledge the error, remove the duplicate calls from the survey and pay Knights the bonus it was entitled to for the quarter in question.

15.	Knights is one of two PSP program participants in its service area.  The other PSP program participant has always been paid a bonus and has not been subjected to the duplicate call survey error.

16.	 In August 2008, Knights was informed in an email from Brian DuBree, AAA's Territory Manager, that a meeting among the PSP program participants would be scheduled to

4

discuss a number of issues. Knights never received notice of the date of a meeting of PSP program participants, but was contacted by a representative of Superior Motor Services ("Superior"), who stated that he wanted to meet with a representative of Knights to discuss business operations for AAA within the Bucks County, Pennsylvania area. Knights agreed to the meeting. During the meeting, the Superior representative presented a map of Bucks County that contained a line dividing the area between Knights and Superior and suggested to Knights that it would be in the best economic interests of both Knights and Superior if Knights agreed to divide Bucks County as described in the map. Knights refused Superior's offer and pointed out to Superior that dividing Bucks County as Superior had suggested would not benefit Knights because Knights was not authorized by AAA to perform battery service, a very lucrative service, while Superior was authorized by AAA to perform battery service.

17. Knights previously had asked DuBree to authorize it to perform battery service. DuBree refused Knights' request and in fact told Knights that it would never participate in the battery service program.

18. In August 2008, shortly after Knights refused Superior's offer to divide Bucks County in accordance with the plan devised by Superior, Knights' customer service call volume dropped 30%.

19. In August 2008, AAA implemented a new "light service layer" as part of the PSP program. Under the light service layer, AAA would first dispatch a light service truck in response to a customer service call, and then dispatch a tow truck only if such service were necessary. However, DuBree informed Knights that it would not be included in the light service layer. DuBree excluded Knights from the light service layer in order to benefit Superior.

20. By letter dated October 30, 2008, DuBree informed Knights that the Bucks County service area would be divided between Knights and Superior in the same manner as Superior had suggested to Knights in August 2008. In addition, DuBree previously had informed Knights that although it was permitted to respond to customer service calls only within the newly-defined territory, three (3) other AAA-approved towing companies would be permitted to respond to customer service calls throughout the entire Bucks County service area. DuBree further informed Knights that Superior, the only AAA battery service provider in the Bucks County service area, would continue to provide both battery service and light service throughout the entire Bucks County service area.

21. The newly-designed Bucks County service area and revised road service provider services and rules became effective November 1, 2008.

22. The newly-designed Bucks County service area and revised road service provider services and rules were designed to benefit Superior at the expense of Knights and caused serious and substantial economic damage to Knights.

23. DuBree's letter dated October 30, 2008 constituted a modification/amendment to the RASPA, which modification/amendment was in direct violation of Section XVI thereof because DuBree is not a Director, Managing Director or Vice President of AAA.

24. DuBree knew, or should have known, that his letter dated October 30, 2008 constituted a modification/amendment to the RASPA that was in direct violation of Section XVI thereof because he was not a Director, Managing Director or Vice President of AAA at the time.

## Count I

*Breach of Contract*

25. Plaintiff incorporates herein the preceding paragraphs as if set forth at length.

26. Pursuant to and consistent with the RASPA, AAA was obligated to make available to Knights certain emergency road service calls of AAA members in Knights' specified contractual territory and to pay Knights for such services as described in the RASPA.

27. Pursuant to the RASPA, Knights provided emergency road service to AAA members consistent with the requirements of the RASPA, except where it was unable to do so due to AAA's frustrating the purpose of the RASPA by wrongfully diverting certain roadside assistance calls from Knights.

28. Knights incurred significant reimbursable costs and expenses in providing services to AAA and to its members in accordance with the RASPA for which it has not been paid.

29. Knights also incurred significant overhead, staff, and equipment expenses in reasonable expectation of fulfilling its contractual obligations under the terms of the RASPA. These expenditures by Knights were reasonably foreseeable by AAA given the nature of the performance required of Knights under the terms of the RASPA.

30. AAA has benefited from the services provided by Knights under the RASPA.

31. AAA has breached the RASPA by, among other things:

    a. refusing to remove duplicate calls from the survey and paying Knights the bonus to which it was entitled;

      b.      dividing the Bucks County service area effective November 1, 2008 in the manner suggested by DuBree in his October 30, 3008 letter;

      c.      unilaterally reducing Knights' contractual territory; and

      d.      diverting emergency roadside assistance calls in the Bucks County service area away from Knights and failing to allow Knights to compete for those calls.

32.      As a direct, proximate and foreseeable consequence of AAA's breach of the RASPA as alleged herein, Knights suffered significant financial harm.  Such harm includes, among other things, past lost profits and expenses for staff and equipment incurred based upon the reasonable expectation that AAA would properly perform its contractual obligations.

33.      AAA has breached the covenant of good faith and fair dealing inherent in the RASPA by, among other things:

      a.      unilaterally reducing Knights' contractual territory;

      b.      diverting emergency roadside assistance calls in the Bucks County service area away from Knights and failing to allow Knights to compete for those calls;

      c.      refusing to authorize Knights to participate in the light service layer; and

      d.      refusing to authorize Knights to perform battery service.

34.      As a direct, proximate and foreseeable consequence of AAA's breach of the covenant of good faith and fair dealing as alleged herein, Knights suffered significant financial harm.  Such harm includes, among other things, past lost profits and expenses for staff equipment incurred based upon the reasonable expectation that AAA would properly perform its contractual obligations.

## Count II

*42 U.S.C. §1981*

35.	Plaintiff incorporates herein the preceding paragraphs as if set forth at length.

36.	At all times relevant to this Complaint, AAA knew that Knights was a MBE owned by racial minorities.

37.	AAA intentionally discriminated against Knights by, among other things:

	a.	refusing to authorize Knights to perform battery service in the Bucks County service area, while reserving that benefit for non-MBE participants in the PSP and basic roadside assistance programs;

	b.	refusing to authorize Knights to participate in the light service layer in the Bucks County service area, while reserving that benefit for non-MBE participants in the PSP and basic roadside assistance programs;

	c.	diverting emergency roadside assistance calls in the Bucks County service area away from Knights and failing to allow Knights to compete for those calls, while not imposing similar or any restrictions on non-MBE participants in the PSP and basic roadside assistance programs; and

	d.	dividing the Bucks County service area effective November 1, 2008 in the manner suggested by DuBree in his October 30, 2008 letter in order to benefit Superior, a non-MBE participant in the PSP and basic roadside assistance programs, at the expense of Knights and to cause serious and substantial economic damage to Knights.

38.	AAA's actions violated the Civil Rights Act of 1866, 42 U.S.C. §1981, which protects persons in their right to make and enforce contracts, such as the RASPA at issue in this

case, and has as its goal the removal of the impediment of discrimination from a minority person's ability to participate fully and equally in the marketplace.

39. AAA's conduct has been intentional, deliberate, willful and conducted in callous disregard of Knights' rights.

40. By reason of AAA's discrimination, Knights is entitled to all legal and equitable remedies available under 42 U.S.C. §1981, including but not limited to punitive damages.

### *Jury Demand*

41. Knights demands a trial by jury as to all issues so triable.

### *Prayer for Relief*

WHEREFORE, Plaintiff, Knights Collision Center, LLC, respectfully prays that the Court:

a. enter judgment in its favor and against Defendant for all available remedies and damages under law and equity, including, but not limited to, compensatory damages and pre-judgment and post-judgment interest thereon;

b. order Defendant to pay punitive damages in an amount to be determined at trial;

c. order Defendant to pay the attorneys' fees, costs and expenses and expert witness fees of Knights associated with this case;

d. grant such other and further legal and equitable relief as may be found appropriate and as the Court may deem just or equitable; and

e. retain jurisdiction until such time as the Court is satisfied that Defendant has remedied the unlawful and illegal practices complained of herein and is determined to be in full compliance with the law.


Dated: February 4, 2009                         _____
                                                Robert T Vance Jr (RTV3988)
                                                Law Offices of Robert T Vance Jr
                                                Suite 1530 Land Title Building
                                                100 South Broad Street
                                                Philadelphia PA 19110
                                                215.557.9550
                                                215.557.9552 f

                                                *Attorney for the Plaintiff*